**In re Earnest Roy BAUCOM, Debtor.**

No. 03–32334.

United States Bankruptcy Court, S.D. Illinois.

Feb. 5, 2004.

---

Steven T. Stanton, Edwardsville, IL, for Debtor.

## OPINION

GERALD D. FINES, Bankruptcy Judge.

This matter having come before the Court for hearing on Motion of First Federal Savings Bank of Mascoutah, Illinois Against Steven T. Stanton, Esq. Pursuant to Federal Rule of Bankruptcy Procedure 9011; the Court, having heard arguments of counsel and having reviewed the written memoranda filed by the parties, makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### Findings of Fact

1. The Debtor, Earnest Roy Baucom, filed for relief under Chapter 7 of the Bankruptcy Code on June 4, 2003. He was represented by Attorney Steven T. Stanton.

2. Among the Debtor's creditors was the First Federal Savings Bank of Mascoutah, Illinois, (First Federal Savings) holding a mortgage on Debtor's residence located at 2283 Wellington, Belleville, Illinois.

3. At the time of filing Chapter 7, the Debtor was current on his payments under the mortgage.

4. On July 10, 2003, Attorney J. Patrick Bradley, on behalf of First Federal Savings contacted the office of Steven T. Stanton to inquire as to whether the Debtor intended to reaffirm his mortgage debt with the Bank. Attorney Bradley was informed the Debtor did not wish to reaffirm his obligation with the Bank, and that he, instead, intended to retain the real estate and continue making payments to First Federal Savings pursuant to the terms of the Promissory Note underlying his mortgage.

5. Also, on July 10, 2003, Attorney Bradley wrote a letter to Attorney Stanton explaining that Seventh Circuit precedent did not allow a Debtor to retain property securing a debt without reaffirming the obligation. In support of this assertion, Attorney Bradley sent a copy of the Seventh Circuit case entitled *In re Edwards*, 901 F.2d 1383 (7th Cir.1990), which held that, pursuant to 11 U.S.C. § 521, a debtor was required to make a choice to reaffirm, redeem, or surrender property which served as security for a debt following the filing of a Chapter 7 bankruptcy proceeding. A proposed reaffirmation agreement was also sent to Attorney Stanton for Debtor's signature.

6. On several occasions between July 10, 2003, and August 27, 2003, individuals from Attorney Bradley's office telephoned Attorney Stanton's office to inquire whether the Debtor would reaffirm his obligation. Attorney Bradley's office was informed on these occasions that the Debtor was not obligated to reaffirm the debt in question.

7. On September 3, 2003, First Federal Savings filed a Motion to Compel Debtor to Comply with 11 U.S.C. § 521, and a hearing was held on September 8, 2003, on that Motion.

8. At hearing on September 8, 2003, the Debtor personally appeared. The Debtor indicated that he did not contest the Motion and that he had decided to reaffirm the obligation with First Federal Savings. The entry of the Debtor's dis-

charge was stayed for a period of 15 days from September 8, 2003, so that the parties could complete the reaffirmation agreement.

9. Following the hearing on September 8, 2003, Attorney Tim Massey, an associate in Attorney Stanley's office, refused to sign the Declaration of Debtor's Attorney, which accompanied the proposed Reaffirmation Agreement when requested to do so by attorneys for First Federal Savings. Attorney Massey agreed to present the Reaffirmation Agreement to Attorney Stanton for his signature instead.

10. On September 11, 2003, attorneys for First Federal Savings received a letter from Attorney Stanton indicating that he would not sign the Declaration of Debtor's Attorney because "[t]he debtor has neither authorized nor retained me to sign the attorney declaration."

11. The instant Motion for sanctions was filed by First Federal Savings on September 18, 2003, and a hearing was held on the Motion on January 5, 2004, following two continuances requested by the parties. At the close of hearing on January 5, 2004, the parties were given 14 days in which to file any additional documents or arguments they deemed appropriate. That having been done, the matter is now ripe for this Court's consideration.

### Conclusions of Law

■ Pursuant to Rule 9011(b), an attorney may be sanctioned for submitting or advocating a position for any improper purpose, such as to harass or to cause unnecessary delay or needlessly increase the cost of litigation. F.R.B.P. 9011(b)(1); *Pope v. Federal Express Corp.*, 974 F.2d 982 (8th Cir.1992). Further, pursuant to Rule 9011(b)(2), an attorney may be sanctioned for advocating claims, defenses, and other legal contentions that are not supported by existing law. The determination of whether sanctions are appropriate and to what extent they should be imposed lies within the sound discretion of the Court. F.R.B.P. 9011(c).

■ First Federal Savings has made three main assertions in support of its Motion for sanctions. First and foremost, First Federal Savings argues that Attorney Stanton caused unreasonable delay in maintaining the position that the Debtor herein could retain the real estate serving as collateral for the First Federal Savings' mortgage without reaffirmation or redemption, and that such position was not supported by existing law. The Court finds that First Federal Savings' argument in this regard is correct and is clearly set out in the Seventh Circuit case of *In re Edwards*, 901 F.2d 1383 (7th Cir.1990). In his own memorandum, Attorney Stanton admits that "sometimes a debtor can retain collateral without reaffirmation or redemption, as long as the creditor does not force an election." Attorney Stanton refers to this procedure as keeping the creditor "in limbo." In this case, First Federal Savings indicated early in the proceedings that it would require a reaffirmation agreement from the Debtor if the Debtor wished to retain his real estate and continue making payments on the mortgage. The continued position of Attorney Stanton and his office, that the Debtor did not need to enter into a reaffirmation agreement, was not supported by existing law, and clearly caused undue delay in these proceedings. In fact, First Federal Savings was required to file a Motion to Compel in order to get the Debtor's signature on a reaffirmation agreement. The Court finds it interesting to note that the Debtor did not, in any way, contest the Motion to Compel, but rather confessed the Motion and agreed to sign the Reaffirmation Agreement in settlement of the Motion.

■ In conjunction with his position that a Debtor may retain possession of secured collateral without reaffirmation or redemption, Attorney Stanton has argued in his memorandum that the procedure established by the Seventh Circuit Court in *Edwards, supra,* requires a creditor to file a motion to compel the debtor to make an election, if no election is made on a timely basis. The Court has carefully reviewed the *Edwards* decision and does not read *Edwards* to require such a procedure. In fact, the Court finds that, under 11 U.S.C. § 521, the burden is upon the debtor to make an election as to whether to reaffirm, redeem, or surrender secured collateral. The onus is not on the creditor to enforce its rights, as suggested by Attorney Stanton, but, rather, the burden is upon the debtor to make the appropriate election. The position taken by Attorney Stanton has not only caused delay in the proceedings, but has caused First Federal Savings additional expense in filing the Motion to Compel and taking additional steps, not normally needed, to acquire the Debtor's execution of a reaffirmation agreement.

■ First Federal Savings further asserts that Attorney Stanton should be sanctioned for his practice of charging additional fees above and beyond the initial fee charged as a flat fee for any work required to be done for the debtor in regard to reaffirmation agreements. While the Court finds that the practice of Attorney Stanton of charging a flat fee for specified services and additional fees for services to be performed after the filing of the bankruptcy petition is not, per se, invalid; the Court finds that, in the instant case, the practice caused a great deal of confusion and further led to the unreasonable delay in the proceedings. The Rule 2016(b) Disclosure of Compensation in the instant case indicated that the fee charged

to the Debtor did, in fact, cover attorney work on reaffirmation agreements. Attorney Stanton has indicated that this was incorrect and was, in fact, due to an error in the automatic computer setting on his petition preparation program. Even though this may be the case, Attorney Stanton's practice has caused unnecessary difficulties in communication between the Debtor, Attorney Stanton, and attorneys for First Federal Savings. It is even hard for the Court to determine when Attorney Stanton was representing the Debtor and when he was not. Attorney Stanton indicated that he was not retained to represent the Debtor regarding reaffirmation agreements, yet an attorney from his office appeared at the hearing on the Motion to Compel and agreed to the entry of a reaffirmation agreement in settlement of that Motion. As such, the Court concludes that, while Attorney Stanton's fee practice is not uncommon and not contrary to the Bankruptcy Code, it has exaggerated the difficulties experienced by First Federal Savings in the instant case.

■ Finally, First Federal Savings has argued that Attorney Stanton should be sanctioned for his failure to sign the attorney declaration contained in the reaffirmation agreement that was eventually executed by the Debtor. A review of 11 U.S.C. § 524(d)(2), leads the Court to conclude that an attorney is not obligated to sign the attorney's declaration in a reaffirmation agreement, and that procedures are in place for the Court to approve reaffirmation agreements where no such attorney declaration has been signed. Thus, Attorney Stanton's refusal to sign the attorney declaration is not, in itself, sanctionable conduct. However, in this case, the refusal served as additional confusion and delay. On the one hand, Attorney Stanton and his office appeared to be very involved in negotiating the execution of the

reaffirmation agreement with First Federal Savings through communications and appearance at hearing on the Motion to Compel; yet, on the other hand, when requested to sign the attorney declaration, Attorney Stanton indicated that he had neither been retained nor authorized to do so. The Court can find no authority to support partial representation of a debtor in these instances. An attorney is either in the case, or he is out of the case. Sitting on the fence, as Attorney Stanton has done herein, causes a disservice to both the debtor and to the debtor's creditors.

Pursuant to Federal Rule of Bankruptcy Procedure 9011(c)(2):

(2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated...

A Court may order a party to pay the movant some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation of Rule 9011. A review of the facts and circumstances in the present case leads the Court to conclude that a sanction of $500, payable to the law firm of Greensfelder, Hemker & Gale, P.C., attorneys for First Federal Savings Bank of Mascoutah, Illinois, is sufficient to deter the conduct complained of in this case.